VORYS, SATER, SEYMOUR AND PEASE LLP
Cory D. Catignani (SBN 332551)
cdcatignani@vorys.com
4675 MacArthur Court, Suite 700
Newport Beach, CA 92660
Telephone:  (949) 526-7904
Facsimile:  (949) 383-2385

VORYS, SATER, SEYMOUR AND PEASE LLP
Mark A. Knueve, Ohio Bar No. 0067074 *
*maknueve@vorys.com*
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-6387
Facsimile: (614) 719-4808
*Admitted pro hac vice*

Attorneys for Defendant
BIG LOTS STORES, INC.

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATY CORNEJO, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-001247-MCE-DB<br><br>Judge Morrison C. England, Jr.<br><br>**DEFENDANT BIG LOTS STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION**<br><br>*[Filed concurrently with Memorandum of Points and Authorities; Declaration of Cory D. Catignani; Declaration of Brett Tiberi; Request for Judicial Notice; and [Proposed] Order]*<br><br>Action Filed:  April 20, 2022<br><br>Hearing Date:  March 23, 2023<br>Time:  10:00 a.m.<br>Location:  Courtroom 7 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................... 1

II.   MEET AND CONFER CERTIFICATION ..................................... 2

III.  BACKGROUND .................................................................... 2

    A.    Procedural History ..................................................... 2

    B.    Big Lots Stores, Inc. entered into arbitration agreements with the majority of putative class members ........................... 3

IV.  ARGUMENT ........................................................................ 5

    A.    The Court can grant a defense motion to deny class certification ............. 5

    B.    Big Lots Stores, Inc.'s motion is not premature. ....................................... 5

    C.    Class certification is improper. .................................................. 6

        1.    Cornejo is atypical and an inadequate representative ...................... 6

        2.    No common issues predominate over questions affecting only individual putative class members ........................... 9

        3.    Cornejo cannot satisfy Rule 23(B)(3)'s superiority requirement .................................. 10

    D.    Cornejo lacks standing to challenge the Arbitration Agreement ............. 11

    E.    Big Lots Stores, Inc.'s Arbitration Agreements are enforceable ............. 12

        1.    Big Lots Stores, Inc.'s Arbitration Agreement is valid ................. 13

        2.    The Arbitration Agreement encompasses Cornejo's claims ......... 17

V.    CONCLUSION ................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) .............................13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................6

*Andrews v. Ring LLC*, No. 20-cv-00889, 2020 U.S. Dist. LEXIS 199322
  (C.D. Cal. Sept. 17, 2020)...............................................................................8, 11, 12

*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000) .....................13

*AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011)................................12, 17

*Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579 (9th Cir. 2015)............................7

*Baum v. Am.'s Servicing Co.*, No. 12-cv-00310, 2012 U.S. Dist. LEXIS
  48587 (S.D. Cal. Apr. 5, 2012) ...............................................................................11

*Boumaiz v. Charter Commc'ns LLC*, No. 19-cv-06997, 2021 U.S. Dist.
  LEXIS 102608 (C.D. Cal. May 19, 2021) ..............................................................7, 9

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ..................................................................6

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-
  04456-PJH, 2018 U.S. Dist. LEXIS 215287 (N.D. Cal. Dec. 21, 2018)................7, 8

*Chess v. CF Arcis IX LLC*, No. 20-cv-01625-CRB, 2020 U.S. Dist. LEXIS
  129652 (N.D. Cal. July 22, 2020) ...........................................................................16

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)..............................................17

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................9

*Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017).......5, 8, 9, 11

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008) ................................12

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) .....................................13

*Doninges v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977)...................................6

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ..................................................17

*Evon v. Law Offices of Sidney Mitchell*, 688 F.3d 1015 (9th Cir. 2012).......................6

*Farr v. Acima Credit LLC*, No. 20-CV-8619-YGR, 2021 U.S. Dist. LEXIS
  126431 (N.D. Cal. July 7, 2021)...........................................................................6, 7

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ......................................6

*Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021
U.S. Dist. LEXIS 42447 (C.D. Cal. Feb. 9, 2021)..................................8

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013)...............................16

*Legnaioli v. Chrysler Capital, LLC*, No. EDCV 15-00744-CJC(SPx), 2015
U.S. Dist. LEXIS 182773 (C.D. Cal. June 9, 2015) ...............................16

*Luis v. Orcutt Town Water Co.*, 22 Cal. Rptr. 389 (Cal. Ct. App. 1962) ...................11

*Macedonia Distrib., Inc. v. S-L Dist. Co., LLC*, No. 17-cv-1692, 2020 U.S.
Dist. LEXIS 23836 (C.D. Cal. Feb. 7, 2020)..................................8

*Manning v. Parsons Transp. Grp., Inc.*, No. 1:16-cv-00390-JLT, 2016 U.S.
Dist. LEXIS 76733 (E.D. Cal. June 13, 2016)..................................17

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...............12

*Murphy v. Hrb Green Res.*, No. 16-cv-04151-EDL, 2016 U.S. Dist. LEXIS
200911 (N.D. Cal. Oct. 14, 2016)..................................17

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ...................................13

*Pablo v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894 SI, 2011 U.S.
Dist. LEXIS 87918 (N.D. Cal. Aug. 9, 2011)..................................10

*Perry v. Thomas*, 482 U.S. 483 (1987) ........................................................................12

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ...............................17

*Sherman v. CLP Res., Inc.*, No. 12-cv-8080, 2015 WL 13542759 (C.D. Cal.
Mar. 19, 2015)..................................10

*Tan v. Grubhub, Inc.*, No. 15-cv-05128, 2016 U.S. Dist. LEXIS 186342
(N.D. Cal. July 19, 2016)..................................10, 12

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016)..................................6

*Tschudy v. J.C. Penney Corp., Inc.*, No. 11-cv-1011, 2015 U.S. Dist. LEXIS
165897 (S.D. Cal. Dec. 9, 2015) ..................................8

*Valencia v. VF Outdoor*, No. 1:20-cv-01795-OAD-SKO, 2021 U.S. Dist.
LEXIS 214998 (E.D. Cal. Nov. 5, 2021), *adopted*, 2021 U.S. Dist. LEXIS
234527 (E.D. Cal. Dec. 6, 2021)..................................5, 7, 9, 11

*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022) ...............................13

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)......................5

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..................................6, 9

**Statutes**

28 U.S.C. §1332(d) ........................................................................................................3

28 U.S.C. §1446 ............................................................................................................3

9 U.S.C. § 1 ...................................................................................................................4

9 U.S.C. §2 ..................................................................................................................12

Cal. Civ. Code §1559 ..................................................................................................11

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................1, 2

Fed. R. Civ. P. 23(a) ....................................................................................................6

Fed. R. Civ. P. 23(a)(4) ...............................................................................................6

Fed. R. Civ. P. 23(b)(3) ......................................................................................6, 9, 10

Fed. R. Civ. P. 23(c)(1)(A) ..........................................................................................5

Fed. R. Civ. P. 23(e)(1)(A) ..........................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This litigation is a wage-and-hour class action brought by Plaintiff Katy Cornejo against Defendant Big Lots Stores, Inc. ("Big Lots Stores").[1] Big Lots Stores employed Cornejo as a non-exempt employee at its store in Elk Grove, California. Cornejo – who is not subject to an arbitration agreement with Big Lots Stores – seeks to represent a class of hourly non-exempt employees who worked for Big Lots Stores at its stores in California ostensibly during the period of April 20, 2018 to the present. Cornejo's class claims are defective as a matter of law for two reasons.

First, Big Lots Stores previously settled a class action that released wage-hour claims against Big Lots Stores through February 3, 2020, including claims for unpaid overtime, unpaid minimum wage, meal period violations, rest period violations, non-compliant wage statements, failing to timely pay wages, waiting time penalties, and unfair business practices.[2] Thus, any "class period" here would only extend from February 3, 2020.

Second, nearly all of the putative class members Cornejo seeks to represent are subject to binding arbitration agreements with Big Lots Stores. From February 3, 2020, to January 26, 2023, 97.41% of the putative class members (1,469 of 1,508 associates) executed arbitration agreements with a class action waiver. Under these circumstances, Cornejo cannot satisfy the class certification requirements under Federal Rule of Civil Procedure 23. The Ninth Circuit holds that a plaintiff fails to satisfy Rule 23's typicality and adequacy requirements when she is not subject to arbitration but the putative class members she seeks to represent must pursue their claims in arbitration. Big Lots Stores' motion to deny class certification should be granted on this basis alone.

Additionally, the arbitration agreements executed by the putative class members foreclose compliance with Rule 23's commonality, predominance, and superiority

---

[1] In February 2022, Big Lots Stores, Inc. underwent a corporate reorganization in which Big Lots Stores, Inc. became Big Lots Stores, LLC.

[2] *See* Big Lots Stores, Inc.'s Request for Judicial Notice, filed contemporaneously.

requirements. The arbitration agreements prevent the resolution of Cornejo's claims in a single adjudication; thus, she cannot satisfy commonality or predominance, nor can she show that a class action is a superior method of adjudication.

Finally, Cornejo cannot circumvent her failure to meet Rule 23's certification requirements by arguing the arbitration agreements are unenforceable. The exact Arbitration Agreement Big Lots Stores seeks to enforce has previously been enforced by California courts. And, Cornejo does not have standing to challenge the applicability or enforceability of the agreements.

Because Big Lots Stores clearly establishes that class certification is inappropriate, the Court should grant its motion and deny class certification.

## II.   MEET AND CONFER CERTIFICATION

Pursuant to the Court's Standing Order, undersigned counsel certifies that he has conferred with Cornejo's counsel regarding the class claims Cornejo has alleged. Declaration of Cory D. Catignani, at ¶2. Counsel for Big Lots Stores emailed opposing counsel on February 14, 2023. The parties have been unable to resolve this matter without Court intervention. *Id.*

## III.   BACKGROUND

### A.   Procedural History

On April 20, 2022, Cornejo filed a wage-and-hour class action in Sacramento County, California Superior Court. Doc. 1-1. Cornejo's complaint asserts the following causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Properly Calculate and Pay Overtime Wages; (3) Failure to Provide Lawful Meal Periods; (4) Failure to Authorize and Permit Rest Periods; (5) Failure to Pay All Wages Owed During Employment; (6) Failure to Timely Pay Wages at Termination; (7) Failure to Reimburse Necessary Expenses; (8) Unlawful Deductions from Wages; (9) Failure to Pay Vested Vacation Pay; (10) Knowing and Intentional Failure to Comply with Itemized Wage Statement Provisions; (11) Unfair Business Practices. Doc. 1-1. Cornejo's proposed class is "all persons who are or were employed by Defendants as hourly paid, non-

exempt retail employees in the State of California at any time from five years prior to the filing of this action through resolution or trial of the matter." *Id* at ¶50.

On June 14, 2022, Big Lots Stores removed the action to the United States District Court for the Eastern District of California on the basis of diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§1332(d) and 1446. Doc. 1.

On July 14, 2021, Big Lots Stores settled *Viola Hubbs v. Big Lots Stores, Inc.*, which was a wage-hour class action pending in the Central District of California. *See* Request for Judicial Notice. The *Hubbs* class action settlement released wage-hour claims against Big Lots Stores through February 3, 2020. Thus, any "class period" here would only extend back to February 3, 2020.

**B.**  **Nearly All of the Putative Class Members Agreed to Arbitrate Claims Arising From Their Employment.**

As a condition of their employment, Big Lots Stores new associates must agree to the Mutual Arbitration Agreement for New Associates. Declaration of Brett Tiberi, at ¶¶3, 4 to 13. The Arbitration Agreement contains the following relevant language:

> This Agreement, with the exception of certain excluded claims described below, applies to any legal claims or disputes between you and Big Lots, or its parent, subsidiary, or affiliated companies and their officers, directors, or managers, arising out of or related to your employment, application for employment, or termination of employment with Big Lots ("Covered Claim(s)"). This Agreement applies to all Covered Claims regardless of the date they accrued, and the terms of this Agreement remain in effect after your employment relationship with Big Lots terminates. Covered Claims also include any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including but not limited to any claim that all or part of this Agreement is void or voidable. The arbitrator has exclusive authority to decide such disputes, including but not limited to disputes regarding the arbitrability of Covered Claims.
>
> **Big Lots and I mutually consent to the resolution by arbitration of all Covered Claims. Big Lots and I expressly waive the right to file a lawsuit in court against each other asserting any Covered Claims, and also waive the right to a jury trial.** ***

This Agreement is governed by the Federal Arbitration Act (9 U.S.C. §1, *et seq.*). \*\*\*

**Big Lots and I may not assert any class, collective, or representative action claims in any arbitration pursuant to this Agreement or in any court or any other forum. Nor shall the arbitrator have any authority to arbitrate Covered Claims on a class, collective, or representative basis. All Covered Claims must be arbitrated on an individual basis.** \*\*\*

**Big Lots and I understand that, by agreeing to the terms in this Agreement, both parties are giving up any constitutional or statutory right they may possess to: (1) have Covered Claims decided in a court of law before a judge or a jury; and (2) assert any class, collective, or representative action claims in any arbitration pursuant to this Agreement or in any court or any other forum (except as otherwise provided in this Agreement).**

Tiberi ¶6, Exhibit 1 (emphasis in original).

Big Lots Stores has used the same version of the Arbitration Agreement since before February 3, 2020. Tiberi ¶6. The Arbitration Agreement is used for both new associates and current associates, and the Arbitration Agreement for each is substantively identical. *Cf.* Tiberi ¶¶6, 17, Exhibits 1 and 2. The difference lies in the introductory and closing paragraphs for current associates, which explain that signing the Arbitration Agreement is voluntary for current associates. *Cf.* Tiberi ¶6, Exhibit 1 (new associates) with *id.* at ¶17, Exhibit 2 (current associates).

The total number of hourly non-exempt employees who worked for Big Lots Stores in California at its stores from February 3, 2020 to January 26, 2023, is 1,508. Tiberi ¶21. Of these 1,508 putative class members, 1,469 (or 97.41%) executed the Arbitration Agreement. Tiberi ¶21. Big Lots Stores retains a record of each employee's acknowledgement of the Arbitration Agreement. Tiberi ¶20. Each putative class member who executed an Arbitration Agreement with Big Lots Stores is bound by its terms to submit their claims to arbitration.

Cornejo did not execute an Arbitration Agreement with Big Lots Stores. Tiberi ¶¶23-24, Exhibit 4.

## IV.     ARGUMENT

### A.     The Court can grant a defense motion to deny class certification.

Rule 23 allows any party to bring a motion for a determination of whether an action can properly proceed as a class action. Fed. R. Civ. P. 23(c)(1)(A). "Courts are required to determine whether to certify the action as a class action at 'an early practicable time.'" *Valencia v. VF Outdoor*, No. 1:20-cv-01795-OAD-SKO, 2021 U.S. Dist. LEXIS 214998, at *7 (E.D. Cal. Nov. 5, 2021) (quoting Rule 23(e)(1)(A)), *adopted*, 2021 U.S. Dist. LEXIS 234527 (E.D. Cal. Dec. 6, 2021). "Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009). Indeed, "[t]he Ninth Circuit has rejected [the] assertion that it is procedurally improper for a trial court to rule on a defense motion to deny class certification before a motion for class certification is filed." *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *8 (citing *Vinole*, 571 F.3d at 941).

### B.     Big Lots Stores, Inc.'s motion is not premature.

A party may bring a motion to deny certification early in the litigation even though the parties have not conducted discovery. *See Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 958 (N.D. Cal. 2017) (concluding discovery was not required to decide a motion to deny certification when the motion was "premised on the fact that Plaintiffs did not sign arbitration agreements," but putative class members did).

Big Lots Stores moves to deny certification based on two indisputable facts: (1) Cornejo did not execute an arbitration agreement with Big Lots Stores; and (2) nearly all putative class (97.41%) members voluntarily signed the Arbitration Agreement. *See* Tiberi ¶21. No further discovery is necessary to challenge Big Lots Stores' motion. *See Conde*, 223 F. Supp.3d at 958. "Where the necessary factual issues may be resolved without discovery, [pre-certification discovery] is not required." *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *8 (quoting *Doninges v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304,

133 (9th Cir. 1977)) (alteration in original). *See also Farr v. Acima Credit* LLC, No. 20-CV-8619-YGR, 2021 U.S. Dist. LEXIS 126431 (N.D. Cal. July 7, 2021) (rejecting plaintiff's request for additional discovery because plaintiff was not subject to the arbitration agreement). Thus, the Court may rule on Big Lots Stores' motion now, without further discovery, and deny certification.

## C. Class certification is improper.

Cornejo must satisfy rigorous Rule 23(a) standards: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Cornejo also must show that common issues of fact or law predominate over individual issues, and class action treatment must be superior to other forms of adjudication. Fed. R. Civ. P. 23(b)(3); s*ee also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

### 1.   Cornejo is atypical and an inadequate representative.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011). To be "adequate" for purposes of Rule 23(a)(4), a class representative (1) must not have any conflicts of interest with the proposed class and (2) must prosecute the action vigorously on behalf of the class. *Evon v. Law Offices of Sidney Mitchell*, 688 F.3d 1015, 1030 (9th Cir. 2012). Cornejo is neither typical nor an adequate representative.

"Ninth Circuit precedent forecloses the viability of the proposition that a named plaintiff who has not signed an arbitration agreement can represent a class that includes

persons who have signed arbitration agreements." *Boumaiz v. Charter Commc'ns LLC*, No. 19-cv-06997, 2021 U.S. Dist. LEXIS 102608, at *15 (C.D. Cal. May 19, 2021). Here, Cornejo did not sign Big Lots Stores' Arbitration Agreement, "but seeks to represent a class comprised mostly of employees who did. 'The Ninth Circuit has foreclosed the viability of that proposition.'" *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *11 (quoting *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 U.S. Dist. LEXIS 215287 (N.D. Cal. Dec. 21, 2018)).

A plaintiff fails to satisfy the typicality and adequacy requirements when (like Cornejo) she is not bound by arbitration but the putative class members she seeks to represent must pursue their claims in arbitration. In *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579 (9th Cir. 2015), the court held the plaintiff was not an adequate representative and lacked typicality because she signed an arbitration agreement without a class-action waiver and sought to represent class members who signed arbitration agreements with class action waivers. *Id.* The Ninth Circuit held that class members who signed a waiver would "have potential defenses that Avilez would be unable to argue on their behalf," and so the district court abused its discretion to the extent it certified those classes. *Id.* The Ninth Circuit concluded that, "[t]o the extent the classes and subclasses include individuals who signed class action waivers, Avilez is not an adequate representative and her claim lacks typicality." *Id.* (internal citations omitted).

"Other district courts in the Ninth Circuit have decided class certification is properly denied based upon the existence of an arbitration agreement and class action waiver applicable to unnamed class members but not the proposed class representative." *Farr v. Acima Credit LLC*, No. 20-CV-8619-YGR, 2021 U.S. Dist. LEXIS 126431, at *17 (N.D. Cal. July 7, 2021) ("Litigation of these defenses could very well threaten to overwhelm other issues in the litigation."). As this Court recently noted, "district courts within this Circuit have consistently relied on *Avilez* to reach a similar result." *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *12 (collecting cases).

In *Campanelli*, 2018 U.S. Dist. LEXIS 215287, for example, the court found a plaintiff who was not subject to an arbitration clause or class action waiver was "not an adequate representative and his claims lack typicality with respect to putative Rule 23 plaintiffs who have signed these agreements." *Id.* at \*20. Likewise, in *Andrews v. Ring LLC*, No. 20-cv-00889, 2020 U.S. Dist. LEXIS 199322 (C.D. Cal. Sept. 17, 2020), the court denied certification because "Plaintiff is not subject to an arbitration agreement. The bulk of the proposed class is subject to an arbitration agreement. Plaintiff is therefore atypical and inadequate because he will be unable to assert certain arguments (such as unenforceability) on behalf of the proposed class." *Id.* at \*13. *See also Macedonia Distrib., Inc. v. S-L Dist. Co., LLC*, No. 17-cv-1692, 2020 U.S. Dist. LEXIS 23836, at \*14 (C.D. Cal. Feb. 7, 2020) (denying certification, stating: "Given that Macedonia is one of only 10 putative class members (out of 182) who did not sign a release, class action, or arbitration provision, it is atypical of the class members."); *Conde*, 223 F. Supp. 3d at 958 (N.D. Cal. 2017) (finding that named plaintiffs were not subject to defenses typical of proposed class because, having not signed agreements with similar terms, they have "no interest in the enforceability of the arbitration agreement itself, and lack the ability to challenge the agreements on behalf of individuals who did sign such agreements"); *Tschudy v. J.C. Penney Corp., Inc.*, No. 11-cv-1011, 2015 U.S. Dist. LEXIS 165897, at \*11 (S.D. Cal. Dec. 9, 2015) (granting defendant's motion to decertify the class in part because the named plaintiffs failed to satisfy the typicality and adequacy requirements when named plaintiffs were "not subject to the arbitration agreements" and the putative class members were "uniquely subject to having their disputes resolved in a non-judicial forum"); *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021 U.S. Dist. LEXIS 42447, at \*9 (C.D. Cal. Feb. 9, 2021) (holding plaintiffs who did not sign arbitration agreements "lack typicality and adequacy with respect to the class members who signed arbitration agreements and class action waivers, which make up over 85% of the putative class."); *Boumaiz v. Charter Communs. LLC*, No. 2:19-cv-06997-JLS-ADS, 2021 U.S. Dist.

LEXIS 102608, at *17 (C.D. Cal. May 19, 2021) (holding that plaintiff who did not sign an arbitration agreement "is not an adequate representative and her claims lack typicality" as to those who did sign such agreements).

Here, Cornejo did not execute an arbitration agreement with Big Lots Stores. Despite this, Cornejo seeks to represent putative class members who did execute the Arbitration Agreement. Cornejo has no interest in the enforceability of the Arbitration Agreement and cannot challenge the Arbitration Agreement on behalf of the individuals who executed it. Accordingly, the divergence between Cornejo's interest and position and that of the putative class members destroys typicality and renders Cornejo an inadequate representative. The Court should grant Big Lots Stores' motion on this basis alone. *See Valencia*, 2021 U.S. Dist. LEXIS 214998, at *16 n.4 ("Having found Plaintiff cannot demonstrate typicality and adequacy, the [court] need not address Defendant's arguments that Plaintiff also cannot satisfy commonality, predominance, or superiority under Rule 23."); *Conde*, 223 F. Supp. 3d at 963 (same).

### 2.   No common issues predominate over questions affecting only individual putative class members.

The Arbitration Agreement executed by the putative class members here further dooms the commonality, predominance, and superiority certification requirements and shows why class certification is improper.

Cornejo's claims "must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Rule 23(b)(3) requires that the Court "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Here, the Arbitration Agreement executed by putative class members prevents the resolution of Cornejo's claims in a single adjudication. Instead, each putative class member who executed the Arbitration Agreement must have his or her claims arbitrated on an individual basis by the Agreement's express, agreed-to terms. *See* Tiberi ¶6, Exhibit 1 and *id.* at ¶17 Exhibit 2. ("Big Lots and I may not assert any class, collective, or representative action claims in any arbitration pursuant to this Agreement or in any court or any other forum..."). Thus, Cornejo cannot satisfy commonality or predominance, and class certification must be denied. *See e.g.*, *Tan v. Grubhub, Inc.*, No. 15-cv-05128, 2016 U.S. Dist. LEXIS 186342, at *13 (N.D. Cal. July 19, 2016) (granting motion to deny certification in part because "the class action waiver provisions prevent the resolution of claims for all members in a single adjudication"); *Sherman v. CLP Res., Inc.*, No. 12-cv-8080, 2015 WL 13542759, at *2–3 (C.D. Cal. Mar. 19, 2015) (describing prior Rule 23 and FLSA certification order holding that "putative class members who signed enforceable arbitration agreements would have to be excluded from the class"); *Pablo v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894 SI, 2011 U.S. Dist. LEXIS 87918, at *6 (N.D. Cal. Aug. 9, 2011) (denying certification in part because "defendants have presented significant evidence of numerous enforceable arbitration agreements").

### 3. Cornejo cannot satisfy Rule 23(b)(3)'s superiority requirement.

Rule 23(b)(3) requires the Court find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because nearly all putative class members (97.41%) are subject to arbitration, a class proceeding is an inferior vehicle through which to litigate this action. *See, e.g.*, *Pablo*, 2011 U.S. Dist. LEXIS 87918, at *5 (denying motion for certification in part because the "arbitration agreements [] signed by defendants and their employees ... support the Court's finding that a class action is not the superior method of adjudication in this case"); *Tan*, 2016 U.S. Dist. LEXIS 186342, at *13 (granting motion to deny certification in part because "the class action waiver provisions prevent the

resolution of claims for all members in a single adjudication," thus, plaintiff could not establish "that the class action procedure is a superior method of adjudication"). Cornejo cannot meet her burden to show that trial of the case as a class action would be the superior method for adjudication. Therefore, Big Lots Stores' motion to deny certification should be granted.

### D.   Cornejo lacks standing to challenge the Arbitration Agreement.

Cornejo also lacks standing to challenge the applicability or enforceability of the Arbitration Agreement because she is not a party to the Agreement. As this Court explained, courts "have uniformly held that a named plaintiff who is [not] subject to an arbitration agreement or class action waiver does not have standing to challenge its applicability or enforceability." *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *15 (collecting cases). "As a non-party, Plaintiff has no standing to challenge the agreement's enforceability." *Andrews*, 2020 U.S. Dist. LEXIS 199322, at *9. "Nor can [s]he challenge the provisions on behalf of unnamed putative class members who have agreed to those provisions." *Id.* (citation omitted). "Under California law, a plaintiff lacks standing to challenge a contract if he is not a party to the contract or if the principal contract 'was not made expressly for the benefit of plaintiff.'" *Baum v. Am.'s Servicing Co.*, No. 12-cv-00310, 2012 U.S. Dist. LEXIS 48587, at *11 (S.D. Cal. Apr. 5, 2012) (quoting *Luis v. Orcutt Town Water Co.*, 22 Cal. Rptr. 389, 394 (Cal. Ct. App. 1962)); *see also* Cal. Civ. Code §1559 (contract rights and defenses may be enforced only by parties and an intended third-party beneficiary). Individuals who have never been impacted by an arbitration agreement may not challenge the enforceability of that agreement. *See, e.g., Conde*, 223 F. Supp.3d at 960 (holding plaintiffs who did not sign arbitration agreements "have no interest in the enforceability of the arbitration agreement itself, and lack the ability to challenge the agreements on behalf of individuals who did sign such agreements.").

Cornejo did not sign the Arbitration Agreement with Big Lots Stores. Thus, she does not have standing to challenge the applicability or enforceability of the Arbitration

Agreement that each putative class member signed. *See e.g.*, *Tan*, 2016 U.S. LEXIS 186342, at *15 (granting motion to deny certification, finding plaintiff "has no standing to challenge the applicability or enforceability of the arbitration and class action waiver provisions" as "they do not apply to him"). Because Cornejo lacks standing to assert defenses to the Arbitration Agreement's applicability or enforceability, and the putative class members are not yet parties before the Court, the Court may not entertain such arguments. *See e.g.*, *Andrews*, 2020 U.S. Dist. LEXIS 199322, at *10 (stating "any declaration by this Court regarding the enforceability of the arbitration agreement [as to unnamed putative class members] would constitute an impermissible advisory opinion").

### E.   Big Lots Stores, Inc.'s Arbitration Agreements are enforceable.

Because the majority of putative class members have executed the valid Arbitration Agreement that covers Cornejo's claims here, the putative class members must pursue their claims individually in arbitration. The Federal Arbitration Act (FAA) declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Thus, "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA "favor[s] arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Big Lots' Arbitration Agreement states it "is governed by the Federal Arbitration Act." *See* Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. Therefore, the FAA applies to this case. Big Lots Stores has also established the existence of a valid, written agreement to arbitrate and that the agreement to arbitrate encompasses the dispute at issue. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

1           **1.      Big Lots Stores, Inc.'s Arbitration Agreement is valid.**

2           "A court may invalidate an arbitration agreement based on 'generally applicable

3   contract defenses' like fraud or unconscionability." *Viking River Cruises, Inc. v.*

4   *Moriana*, 142 S. Ct. 1906, 1917 (2022).[3] Under California law, a contract "is

5   unenforceable if it is both procedurally and substantively unconscionable." *Davis v.*

6   *O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). Procedural unconscionability

7   focuses on both oppression and surprise. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257,

8   1280 (9th Cir. 2006). "'Oppression arises from an inequality of bargaining power that

9   results in no real negotiation and an absence of meaningful choice,' while '[s]urprise

10  involves the extent to which the supposedly agreed-upon terms are hidden in a prolix

11  printed form drafted by the party seeking to enforce them.'" *Id.* (quoting *A & M Produce*

12  *Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "An arbitration provision is

13  substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Id.*

14  (quoting *Armendariz v. Found. Health Psychcare Servs.,* 24 Cal. 4th 83, 114 (2000)).

15          In addition to her lack of standing, Cornejo cannot show that Big Lots Stores'

16  Arbitration Agreement is invalid. At the outset, the exact Arbitration Agreement Big

17  Lots Stores seeks to enforce has previously been enforced by California courts. *See* Big

18  Lots Stores' Request for Judicial Notice.

19          First, the Arbitration Agreement is not procedurally unconscionable. Big Lots

20  Stores provided the Arbitration Agreement to each putative class member so they could

21  review and understand it. Tiberi ¶18. Associates are instructed to read the entire

22  document and are encouraged to contact Human Resources if they have questions.

23  Tiberi ¶18. Each putative class member signed the Arbitration Agreement only after

24  they had adequate time to review and understand its terms. Tiberi ¶18. Associates may

25  decline to execute the Arbitration Agreement, as Cornejo declined. Tiberi ¶¶19, 23-24,

26

27  [3] Because Big Lots Stores anticipates that Cornejo will allege that the Arbitration
    Agreement is unconscionable, it addresses that potential defense here. Big Lots Stores
28  expressly reserves the right to defend the Arbitration Agreement based on any other
    argument that Cornejo may assert.

Exhibit 4.

*New Associates.* Every new associate is required to download, review, and acknowledge the Arbitration Agreement. Tiberi ¶6. The Arbitration Agreement is a stand-alone document, titled, "**Big Lots Mutual Arbitration Agreement for New Associates**." Tiberi ¶6, Exhibit 1. When a new associate accesses the Arbitration Agreement, MyBigLots prompts the associate with a message instructing the associate to review and acknowledge the Arbitration and, "[b]y doing so, please note that you have reviewed, understand, and agree to the content of the document in its entirety." Tiberi ¶7. To close the pop-up window, an associate must affirmatively select "OK." Tiberi ¶8. The Arbitration Agreement's opening section states in bold:

> **Please read this entire document carefully. This document concerns your legal rights, so take time to review it and consult with an attorney if necessary. Big Lots has a process for resolving employment-related legal disputes with employees that involves binding arbitration. This Big Lots Mutual Arbitration Agreement ("Agreement") describes that process and is a mutually binding agreement between you and [Big Lots].**

Tiberi ¶6, Exhibit 1. At the end of the Arbitration Agreement is a section that states in bold:

> **Big Lots and I understand that, by agreeing to the terms in this Agreement, both parties are giving up any constitutional or statutory right they may possess to: (1) have Covered Claims decided in a court of law before a judge or a jury; and (2) assert any class, collective, or representative action claims in any arbitration pursuant to this Agreement or in any court or any other forum (except as otherwise provided in this Agreement).**

Tiberi ¶6, Exhibit 1.

Associates can download and print the Arbitration Agreement or review the Arbitration Agreement on the computer. Tiberi ¶9. Associates have seven days to agree to the Arbitration Agreement after they access it on MyBigLots. Tiberi ¶9. Once associates have read the Arbitration Agreement, they must affirmatively select an electronic acknowledgment, which must be accessed through MyBigLots. Tiberi ¶10.

The acknowledgment signifies that the associate read and consented to the Arbitration Agreement. Tiberi ¶10. The associate's acknowledgment is recorded and maintained in MyBigLots. Tiberi ¶11.

***Current Associates.*** For current associates like Cornejo, the Company provides associates with a link to review the Arbitration Agreement. Tiberi ¶18. Associates access the link by entering their unique Employee ID and logging in using the secure passwords they created. Tiberi ¶17. Associates are instructed to read the entire Arbitration Agreement before acknowledging, and are encouraged to contact Human Resources with any questions. Tiberi ¶18. The "**Big Lots Mutual Arbitration Agreement for Current Associates**" introductory and closing paragraphs provide (in bold):

> **Please read this entire document carefully. This document concerns your legal rights, so take time to review it and consult with an attorney if necessary. Big Lots has a process for resolving employment-related legal disputes with employees that involves binding arbitration. This Big Lots Mutual Arbitration Agreement ("Agreement") describes that process and is a mutually binding agreement between you and the parent, subsidiary or affiliated entity of Big Lots Stores, Inc. that employs you ("Big Lots"). It is your voluntary choice whether or not to sign this Agreement. Your employment with Big Lots will not be affected by whatever choice you make.**
>
> ***
>
> **I acknowledge that my decision to sign this Agreement is completely voluntary, and I understand that my employment will not be affected regardless of whether or not I choose to sign this Agreement.**

Tiberi ¶17, Exhibit 2.

Once associates have read the Arbitration Agreement, they must affirmatively click a box to indicate their acknowledgement, which must be accessed through Big Lots University using their secure, unique password. Tiberi ¶¶17-18. By clicking the box, associates represent: (1) they agree to the terms of the Arbitration Agreement and to be bound by its terms; (2) they are entering into the Arbitration Agreement

voluntarily and have had adequate time to review the agreement; and (3) they agree to sign the Arbitration Agreement electronically and that their electronic signature is legally binding and the equivalent of a handwritten signature. Tiberi ¶18, Exhibit 3. Once an associate has acknowledged and accepted the terms of a document, the document will appear as "completed" on the associate's eLearning history. Tiberi ¶19.

These facts demonstrate the Arbitration Agreement is not procedurally unconscionable. *See e.g.*, *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (holding arbitration agreement was not procedurally unconscionable because the "arbitration clause allows [signatories] to reject arbitration" and the clause was not "buried in fine print"); *Chess v. CF Arcis IX LLC*, No. 20-cv-01625-CRB, 2020 U.S. Dist. LEXIS 129652, at *23 (N.D. Cal. July 22, 2020) (finding arbitration agreement not procedurally unconscionable in part because "the arbitration agreement is written in capitalized, bolded font"); *Legnaioli v. Chrysler Capital, LLC*, No. EDCV 15-00744-CJC(SPx), 2015 U.S. Dist. LEXIS 182773, at *7 (C.D. Cal. June 9, 2015) (finding arbitration agreement not procedurally unconscionable in part because it included a "section that warns the [signer] not to sign this agreement before you read it").

Next, Big Lots Stores' Arbitration Agreement is not substantively unconscionable. The Arbitration Agreement provides for an arbitrator "chosen by the parties." Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. The Arbitration Agreement allows the arbitrator to "apply the substantive law of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. The arbitrator "will issue a written decision explaining his/her findings of fact and conclusions of law upon which the decision rests." Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. Big Lots Stores agrees to "pay the employee filing fee, AAA administrative costs and fees, the arbitrator's costs and fees, and any employee filings fees that exceed $300." Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. Finally, "[t]he types of relief available in the arbitration will include and be limited to all relief that would be available" in court under the law under which the claim is

1   brought. Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. These facts demonstrate the
2   Agreement is not substantively unconscionable. *See e.g.*, *Murphy v. Hrb Green Res.*,
3   No. 16-cv-04151-EDL, 2016 U.S. Dist. LEXIS 200911, at *10 (N.D. Cal. Oct. 14,
4   2016) (finding arbitration agreement not substantively unconscionable because the
5   "Defendant alone is responsible for arbitration fees"); *Manning v. Parsons Transp.*
6   *Grp., Inc.*, No. 1:16-cv-00390-JLT, 2016 U.S. Dist. LEXIS 76733, at *27 (E.D. Cal.
7   June 13, 2016) (finding arbitration agreement not substantively unconscionable in part
8   because it provided the arbitrator with authority to award "any remedy [one] might
9   obtain through a court of law").

10          That the Arbitration Agreement is a non-negotiable employment agreement does
11   not change the fact that it is valid. "In the employment context, if an employee must
12   sign a non-negotiable employment agreement as a condition of employment but there
13   is no other indication of oppression or surprise, then the agreement will be enforceable
14   unless the degree of substantive unconscionability is high." *Poublon v. C.H. Robinson*
15   *Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (internal citations and quotation marks
16   omitted). In short, the Arbitration Agreement between Big Lots and each putative class
17   member is valid.

18                 **2.      The Arbitration Agreement encompasses Cornejo's claims.**

19          An agreement between an employer and an employee to arbitrate employment-
20   related disputes is valid and enforceable under the FAA. *See e.g.*, *Circuit City Stores,*
21   *Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the
22   supposition that the advantages of the arbitration process somehow disappear when
23   transferred to the employment context."). Employers may include class action waivers
24   in their arbitration agreements with employees. *Epic Systems Corp. v. Lewis*, 138 S.
25   Ct. 1612, 1632 (2018); *AT&T Mobility LLC*, 563 U.S. at 341.

26          Big Lots Stores' Arbitration Agreement states it "applies to any legal claims or
27   disputes between you and Big Lots ... arising out of or related to your employment,
28   application for employment, or termination of employment with Big Lots ('Covered

Claim(s)')". Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. The only claims not covered – none of which Cornejo raises here – are those for unemployment or workers' compensation benefits, whistleblower claims under the Sarbanes-Oxley Act, claims under the National Labor Relations Act, benefits claims under the Employee Retirement Income Security Act, and claims pending in court. Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. The Arbitration Agreement also includes a class action waiver: "Big Lots and I may not assert any class, collective, or representative action claims in any arbitration pursuant to this Agreement or in any court or any other forum. *** All Covered Claims must be arbitrated on an individual basis." Tiberi ¶6, Exhibit 1 and *id.* at ¶17, Exhibit 2. Thus, the Arbitration Agreement encompasses Cornejo's employment-related wage-and-hour class claims.

## V.     CONCLUSION

Cornejo did not sign Big Lots Stores' Arbitration Agreement, but seeks to represent a class comprised of nearly all employees who did (97.41% of the putative class). The law on this is clear: "The Ninth Circuit has foreclosed the viability of that proposition." *Valencia*, 2021 U.S. Dist. LEXIS 214998, at *11. For the reasons stated above, the Court should grant Defendant Big Lots Stores, Inc.'s motion to deny class certification.


Dated: February 15, 2023          Respectfully submitted,


                                  /s/ *Cory D. Catignani*
                                  Cory D. Catignani

                                  Attorney for Defendant
                                  BIG LOTS STORES, INC.